IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CITIZENS INSURANCE COMPANY OF AMERICA** | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **GERALD V. UNG and EDWARD DiDONATO** | : | |
| | : | NO. 13-1978 |

MEMORANDUM

RESTREPO, J.                                                                                           FEBRUARY 21, 2014

      Plaintiff, Citizens Insurance Company of America ("Citizens"), initiated this declaratory judgment action[1] against defendants, Gerald V. Ung ("Ung") and Edward DiDonato, seeking a declaration that, under a homeowners insurance policy ("the Policy") issued by Citizens to Ung's parents, Citizens is not obligated to defend and indemnify Ung in connection with a civil lawsuit currently pending in the Philadelphia Court of Common Pleas ("underlying state action").[2] Before the Court are plaintiff's motion for summary judgment and the cross-motions for summary judgment filed by defendants, Ung and DiDonato, respectively.[3] For the reasons

---

[1]This case was originally assigned to the Hon. Gene E.K. Pratter and was subsequently reassigned to my calendar.

[2]Citizens is currently defending Ung in the underlying state action under a complete reservation of rights. *See* Cert. of Mary Laveck (claims professional handling underlying state action on behalf of Citizens) ¶ 6 (JA 391).

[3]Although each of the three parties have filed separate motions for summary judgment, in support of defendant Ung's motion, he relies solely on the reasons set forth in defendant DiDonato's motion and brief. Accordingly, DiDonato's brief in support of his motion is cited herein simply as "Def.'s Br." (Document 31), and plaintiff's brief in support of its motion is cited herein as "Pl.'s Br." (Doc. 34). The briefs filed in opposition to the respective cross-motions are cited herein as "Pl.'s Br. Opp. DiDonato's Mot." (Doc. 38) and "Def.'s Br. Opp. Pl.'s Mot." (Doc. 40).

explained below, the motions filed by defendants for summary judgment are granted with respect to Citizens' duty to defend Ung in the underlying state action, and denied as premature with regard to Citizens' duty to indemnify Ung. Plaintiff's cross-motion is denied, and this civil action is dismissed without prejudice to Citizens' right to re-file with regard to Citizens' duty to indemnify.[4]

1.  **BACKGROUND**

On December 30, 2011, defendant DiDonato initiated the underlying state action by filing a Complaint (JA, Ex. A) against Gerald Ung and other parties. On February 15, 2011, DiDonato filed the operative Amended Complaint in the underlying state action (JA, Ex. B).[5] That Amended Complaint alleges, among other things, that during the early morning hours of January 17, 2010 Ung assaulted and shot DiDonato, who was unarmed, several times with a gun while walking in Center City Philadelphia resulting in Didonato suffering serious and debilitating injuries requiring continuing extensive medical treatment.[6] (JA 22-24, 34, 46-48.)

---

[4] During the telephonic status conference on Jan. 28, 2014, counsel for each of the parties stipulated on the record that there were no material facts at issue and that this case was ripe for summary judgment. *See, e.g., Dabney v. Augusta Mut. Ins. Co.*, 710 S.E.2d 726, 732 (Va. 2011) (citing *State Farm Mut. Auto Ins. Co. v. Douglas*, 148 S.E.2d 775, 777 (Va. 1966)) (issue of whether notice has been given to the insurer "as soon as practicable" is an issue for the court to decide "when the facts are undisputed and certain."); *Penn-Am. Ins. Co. v. Mapp*, 461 F. Supp.2d 442, 453 (E.D. Va. 2006) (finding that "the notice issue is ripe for decision upon pretrial motion" where the parties agreed that there was no material fact in dispute).

[5] In support of their respective summary judgment motions, the parties have submitted a Joint Appendix (cited herein as "JA") which includes documents which are identified as Exhibits A through L, with each page in the Appendix identified by a Bates Number.

[6] At the time of the underlying incidents, Ung was a student at a law school in Philadelphia and was over 18 years old. *See* Aff. of Gerald V. Ung ("Ung Aff.") ¶ 3 (JA 169).

Citizens issued a homeowners insurance policy, effective October 31, 2009 to October 31, 2010, to Ung's parents, Narinee H. Ung and John Ung. (JA, Ex. C.) Ung's parents live in Virginia, and the Policy was in force on the date of the shooting. (JA 52.)

The Policy explains that Citizens has duties to defend and indemnify the insureds under certain conditions. It states that, "[Citizens] will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy" (JA 55). "Section II - Liability Coverages" of the Policy regarding "Personal Liability" provides:

> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
>
> 1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. . . .
>
> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

(JA 66.) An "occurrence" means an accident which results, during the Policy period, in bodily injury or property damage. (JA 55.) Under the Policy, personal liability coverage does not apply to bodily injury that is "expected or intended by the 'insured.'" (JA 66.) "Section II - Conditions" in the Policy includes the following:

> 3. **Duties After Loss.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:
>
>    a. Give written notice to us or our agent as soon as is practical, which sets forth:

3

>> (1) The identity of the policy and "insured";
>
>> (2) Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and
>
>> (3) Names and addresses of any claimants and witnesses;
>
> b. Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence."

(JA 70.)

Prior to Ung's deposition on January 24, 2013, he was unaware that his parents had a homeowners or general liability insurance policy. *See* Ung Aff. ¶ 5 (JA 169). Ung also stated that he had no reason to believe that his parents' homeowners insurance could cover claims against him given that he was an adult at the time. *Id.* ¶¶ 7-9 (JA 169).

On January 24, 2013, during Ung's deposition, he was asked whether his parents had a homeowners insurance policy, and he was told that if they were insured, the carrier would be required to defend and indemnify him for personal liability. *See* Ung Dep. 1/24/13, at 1, 12-24 (JA 282, 333). Ung, through his mother, promptly put Citizens on notice of this claim four days later, on January 28, 2013.

Ung's parents have testified that prior to January 24, 2013 they had no reason to believe that their homeowners insurance would cover claims against their son who was over 18 years old at the time and attending law school in a different state. *See* Aff. of Narinnee H. Ung ¶ 7 (JA 171); Aff. of John S. Ung ¶ 7 (JA 173). They further testified that Citizens never explained to them that such an incident could be covered under their homeowners policy. *See id.* ¶ 8 (JA 173); Aff. of Narinnee Ung ¶ 8 (JA 173). It appears that Ung's counsel in the underlying state

action was also unaware that coverage might exist under these circumstances. *See, e.g.*, Interrogs. of Def. Lucy's Hat Shoppe, LLC Directed to Def. Ung ¶ 21 (JA 186-87).

Citizens contends that it is not obligated to defend or indemnify Ung in the underlying state action because Ung breached the Policy's notice provisions. *See* Pl.'s Br. 8-12. Plaintiff further argues that it has no duty to defend or indemnify Ung because the Complaint in the underlying state action does not allege an "occurrence" for purposes of the Policy and that the Policy's "Expected or Intended" exclusion applies. *Id.* at 13-19. In particular, plaintiff contends that the facts alleged in the Amended Complaint in the underlying state action and the nature of DiDonato's claims therein indicate that Ung performed only intentional acts that did not qualify as "act[s] of negligence" under the Policy. *Id.* at 13-19.

DiDonato argues that Citizens' claims regarding the notice provision of the Policy fail in that Ung's delay in notifying Citizens was objectively reasonable and, in any event, was not substantial and material. *See* Def.'s Br. 12-19. Thus, defendant argues that since the delay in notice to Citizens was not substantial and material, Ung did not breach the Policy such that Citizens no longer bears the duty to defend and indemnify Ung. *Id.* at 7-12. Defendant acknowledges that plaintiff's duty to indemnify is not yet triggered as there has been no verdict in the underlying state action as to whether Ung is actually liable for any acts of negligence. *Id.* at 11-12.

2. **LEGAL STANDARD**

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In examining the motion, all reasonable inferences must be drawn in the nonmovant's favor.  InterVest, Inc. v. Bloomberg, L.P., 340 F.3d 144, 159-60 (3d Cir. 2003).

The initial burden of demonstrating there are no genuine issues of material fact falls on the moving party.  See Fed. R. Civ. P. 56(a).  Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).  The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which she bears the burden of production.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment.  Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

3.  **DISCUSSION**

    **(a)  Choice of Law**

With regard to the choice of law that applies to this case, Citizens argues that to the

extent there is a conflict between the laws of Pennsylvania and Virginia, Virginia law applies.[7]
*See* Pl.'s Br. (Doc. 34) at 5-7 (citing *Hammersmith*, 480 F.3d 227). Although DiDonato responds that Pennsylvania law should apply, he further argues that this is a moot point because the laws of both jurisdictions are materially identical as to all relevant issues and that "in either event the law requires [Didonato's] motion be granted and Citizens claims be dismissed." *See* Def.'s Br. 7. The Court will assume for purposes of the cross-motions for summary judgment that Virginia law applies.

### (B)   Delay in Notice was Reasonable and Not "Material"

Citizens first argues that it is under no obligation to defend or indemnify Ung in the

---

[7]Citizens points out that a federal court sitting in diversity applies the choice-of-law rules of the forum state - in this case Pennsylvania. *See* Pl.'s Br. 5-6 (citing *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941)). Under Pennsylvania law, where a conflict exists, the Court is required to analyze which state has the greater interest in the application of its law. *See Wilson v. Transport Ins. Co.*, 889 A.2d 563, 571 (Pa. Super. 2005). Under this analysis, plaintiff argues, the Court must bear in mind that it is "'concerned with the contract of insurance' **and not the underlying tort**." see *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 232-33 (3d Cir. 2007) (quoting *McCabe v. Prudential Prop. & Cas. Ins. Co.*, 514 A.2d 582, 586 (Pa. 1986)) (emph. added). Furthermore, "Section 193 [of the Restatement (Second) of Conflicts of Laws] clearly reflects a 'preference that only one set of laws governs a given insurance contract, and a disapproval of the possibility that the laws of different jurisdictions might apply to different risks under the policy.'" *Id.* at 233 (quoting *United Brass Works, Inc. v. Am. Guar. & Liab. Ins. Co.*, 819 F. Supp. 465, 469 (W.D. Pa. 1992)). Plaintiff argues that in this case the principal location of the insured risk during the term of the Policy was Virginia in that the Policy was issued to Ung's parents, the named insureds, in Reston, Virginia, and provides coverage for risks associated with their home in Virginia, and that this factor has greater weight than any other single contact. *See id.* at 235 (citing *McCabe*, 514 A.2d at 586) ("Weighing the . . . contacts on a 'qualitative scale,' it is clear that New York has a more significant relationship to **the insurance contract** than Pennsylvania. The only connection Pennsylvania has to this dispute is that the plaintiff resides, and alleged tort occurred, in Pennsylvania. However, 'we are [primarily] concerned with [the] contract of insurance, and, as to the insurance policy, [New York] has the most significant contacts.'") (emph. added).

underlying state action because Ung breached the Policy's notice provision. *See* Pl.'s Br. 8-12. DiDonato responds that Citizens' "late notice" claims fail under Virginia law (and Pennsylvania law, for that matter) and that Ung's delay in notifying Citizens was objectively reasonable and was not substantial and material. *See* Def.'s Br. 12-19.

"It is well settled that performance of the notice provision of an insurance policy is a condition precedent to coverage, which requires 'substantial compliance' by the insured."[8] *Dabney*, 710 S.E.2d at 731 (citing *State Farm Fire and Cas. Co. v. Scott*, 372 S.E.2d 383, 385 (Va. 1988)). Here, the Policy provides that the insureds had a duty to give notice to Citizens of an "occurrence" or accident "as soon as is practical" (JA 70).

"[I]n order for **untimely** notification to constitute a breach of the policy, such that the insurer no longer bears the duty to defend the insured, the failure to notify must be **substantial and material**." *Dabney*, 710 S.E.2d at 731 (citing *State Farm Mut. Auto Ins. Co. v. Porter*, 272 S.E.2d 196, 199 (Va. 1980)) (emph. added). Thus, as plaintiff's counsel acknowledged during

---

[8] DiDonato argues that because the Policy stated that the insureds "will **help** [Citizens] by seeing that these duties are performed," and did not explicitly state that late notice was a grounds for denial of a claim, Citizens' argument that it did not receive adequate notice under the Policy is moot. *See* Def.'s Br. 12-13 (citing the Policy § II(3)). The Policy does, however, state that Citizens "will provide the insurance described in this policy in return for the premium **and compliance with all applicable provisions** of this policy" (JA 55 (emph. added)), and it provides that the insureds "**will** perform the following **duties**" (JA 70 (emph. added)). Furthermore, unlike defendant's representation of the Policy in his brief, the Policy does **not** state that the insureds are required to give notice "**because** this 'will help [Citizens].'" *See* Def.'s Br. 12 (emph. added); *see also* the Policy § II(3). It merely states that the insureds' compliance with the duty to notify Citizens will help Citizens, but as explained, elsewhere in the Policy the insureds are warned that coverage will be provided "in return for . . . compliance with all applicable provisions" (JA 55), which of course, would include all of the insureds' "duties" set forth in the Policy (JA 70). In any event, for purposes of the cross-motions for summary judgment, the Court will assume that the Policy sufficiently indicated that late notice was grounds for denial of a claim.

the telephone conference on January 28, 2014, even if the Court found that notice were untimely in this case, if plaintiff fails to demonstrate that the delay in notice was substantial and material, Citizens still bears the duty under the Policy to defend Ung. *See id.* There are three factors that bear upon the materiality of a breach of the notice provision of an insurance policy such as the Ungs: (1) the reasonableness of the delayed notice; (2) the amount of prejudice suffered by the insurer as a result of the delay;[9] and (3) the length of time that elapsed before notice was given. *See id.* (citing *N.. River Ins. Co. v. Gourdine*, 135 S.E.2d 120, 124 (Va. 1964)).

"The requirement that notice be given 'as soon as practicable' means that it must be given within a reasonable time after the accident, and what constitutes a reasonable time **depends upon the facts and circumstances of each case.**" *Dabney*, 710 S.E.2d at 732 (citing *Scott*, 372 S.E.2d at 385) (emph. added). "In determining the reasonableness of an insurer's notice, the Virginia Supreme Court follows an objective standard, requiring that an insurer be notified whenever it should reasonably appear to the insured that the policy may be implicated." *Mapp*, 461 F. Supp.2d at 453 (citing *Dan River v. Commercial Union Ins. Co.*, 317 S.E.2d 485, 489 (Va. 1984)).[10]

---

[9]Thus, although "Virginia law does not require that an insurance company be prejudiced by the delay in notification" to find that an insured breached a policy, **the court "consider[s] the absence of prejudice** . . . as it is relevant to a determination of the **materiality** of [the insured's] delay in providing notice." *Mapp*, 461 F. Supp.2d at 452 n.6 (emph. added).

[10]Quoting *Dan River*, Citizens argues that a provision such as that in the Policy requiring prompt notice of an occurrence "requires the insurer to be notified whenever, from an objective standpoint, it should reasonably appear **to the insurer** that the policy may be involved." *See* Pl.'s Br. 9 (quoting *Dan River*) (emph. including underscore added in plaintiff's brief); Pl.'s Br. Opp. Def.'s Mot. 8 (quoting *Dan River*) (emph. including underscore added in plaintiff's brief). Citizens then concludes that there "can be no dispute that from an objective standpoint, it would 'reasonably appear' **to Citizens** . . . that both the shooting and the filing of the [state underlying action] were events that triggered Ung's obligation to provide notice to Citizens under the

The Virginia Supreme Court has "**made it clear that there is not a fixed number of days in which notice must be given for it to be reasonable,**" for purposes of an insurance provision requiring notice "as soon as practicable." *Dabney*, 710 S.E.2d at 732 (citing *Douglas*, 148 S.E.2d at 778) (emph. added) ("What may be a reasonable time under some conditions may be unreasonable under certain other conditions."). Thus, in making this ruling a court must "consider the facts and circumstances surrounding the delay." *Id.* (holding that the lower court erred in finding that a 254-day delay in providing notice was not reasonable in that the court failed to consider the facts and circumstances surrounding the delay).

In *Mapp*, the insurer brought an action seeking a declaratory judgment as to its liability for costs and damages in an underlying personal injury action against its insured where the insured waited two years following the "occurrence" to notify the insurer. *Mapp*, 461 F. Supp.2d at 444. The Court was required to determine whether the insured's delay in notifying the insurer was material. *Id.* at 453. In considering the three factors bearing on materiality, the Court found that: (1) notice was reasonable in light of the circumstances of the occurrence; (2) there was no prejudice to the insurer; and (3) while the length of delay was substantial, notice was given promptly after the insured became aware that a claim was being made involving the policy at issue. *Id.* at 454. Significantly, in support of its finding that notice was reasonable in *Mapp*

---

Policy." *Id.* at 8 (citing *Dan River*, 317 S.E.2d at 487) (emph. added). A review of *Dan River* reflects that plaintiff appears to have misquoted that case. The language from *Dan River* quoted by plaintiff states that the applicable test is that "from an objective standpoint, it should reasonably appear **to the insured** that the policy may be involved." *See Dan River*, 317 S.E.2d at 487 (emph. added); *see also Mapp*, 461 F. Supp.2d at 453 (citing *Dan River*). Somewhat ironically, Citizens - the insurer in this case - also argues elsewhere in its brief in support of its motion that it does **not** reasonably appear even **to Citizens** that the Policy is implicated in the underlying state action. *See* Pl.'s Br. 13-19.

(despite being provided two years after the underlying accident), the Court explained that the underlying accident "occurred after the [insured] bar had closed, in a parking lot not owned by [the insured], and in spite of immediate criminal action against the driver based on intoxication." *Id.* Thus, it appears the Court found that the delayed notice in *Mapp* was reasonable **under the circumstances of the underlying accident** in that it was **reasonable** that an insured would not believe that such an incident would implicate the homeowners policy. Based on this reasoning, the Court found that the insured "was indeed reasonable in its delay" and that "the delay was not material." *Id.* at 454 n.9.

Similarly, under the specific facts and circumstances of this case, it appears that notice was reasonable. In particular, with regard to the underlying incident involving a student in Philadelphia shooting another individual multiple times in Center City Philadelphia, it was objectively reasonable for it not to have appeared to a person in the Ungs' situation that the Policy may be implicated until the time when the Ungs actually gave notice. *See Mapp*, 461 F. Supp.2d at 453 (citing *Dan River*); *see also State Farm Fire and Cas. Co. v. Walton*, 423 S.E.2d 188 (Va. 1992) (court concluded that 2-year delay of notification, **in light of the fact that *the insured had been told by an attorney following the occurrence* to notify the carrier** of its homeowners insurance policy, was a substantial and material breach). Indeed, as explained, it appears that Ung's counsel in the underlying state action (who Citizens has elected to retain) was not aware that the incident implicated the Policy, and even now, **Citizens** itself argues that (irrespective of the delay in notice) the underlying incidents and the underlying state action do not implicate the Policy, and do not even implicate the duty to defend. *See* Pl.'s Br. 13-19. In any event, it cannot properly be said that the delayed notice to Citizens of the underlying incident

or state action was objectively unreasonable for someone in the Ungs situation under these specific facts and circumstances.  *See, e.g., Mapp*, 461 F. Supp.2d at 454.

With regard to prejudice, initially it is noted that, as Citizen's counsel acknowledged during the January 28, 2014 telephonic oral argument, plaintiff **did not *plead*** prejudice or materiality or allege facts supporting such findings with regard to the delay in notice or alleged breach in this case.  *See, e.g., Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (A "complaint must contain sufficient factual matter," that if accepted as true, states a claim for relief "that is plausible on its face."); *see also Dabney*, 710 S.E.2d at 730 ("The law in Virginia is well established that a court cannot enter judgment based on facts that are not alleged in the parties' pleadings."); *Jenkins v. Bay House Assocs.*, 581 S.E.2d 510, 512 (Va. 2003) ("A litigant's pleadings are as essential as his proof, and a court may not award particular relief unless it is substantially in accord with the case asserted in those pleadings.").  Furthermore, plaintiff fails to demonstrate that it was prejudiced by the delay in notice of the underlying incident or the underlying state action.  *See id.* at 452.  Although Citizens argues that it was "prejudiced by Ung's late notice because it was not able to designate counsel for Ung, as was its right under the Policy," *see* Pl.'s Br. 12, once it was notified of the underlying incident and state action, Citizens **elected to retain the same counsel** who had been representing Ung since the outset of the underlying litigation.  *See* Ung Aff. ¶ 15.  Not only does Citizens not argue that Ung's counsel somehow failed to conduct a thorough defense of Ung, but Citizens fails to argue, let alone demonstrate, that it would have elected a different counsel if it had been notified earlier, or that it would have made a difference.

Finally, Citizens argues that the delay in notice deprives plaintiff the opportunity for

appellate review of any adverse decision by this Court.  First, as defendant's counsel pointed out during oral argument and in his brief, Citizens fails to cite any authority that Virginia law recognizes such an alleged deprivation of appellate review in a separate declaratory judgment action can constitute "prejudice" for purposes of materiality of a delay in notice as it relates to the duty to defend or indemnify.  A consideration of the "rationale behind the rule requiring compliance with the notice provision," *see Mapp*, 461 F. Supp.2d at 452 n.5, is instructive here.  "As the Virginia Supreme Court has made plain, notice provisions are designed to afford the insurer the opportunity to make a timely investigation of all circumstances surrounding the [incident] and to prepare an adequate defense if necessary on behalf of the insured."  *Id.*  Here, there is no evidence that Citizens was prejudiced in that regard.

     Furthermore, even assuming that such an alleged deprivation of appellate review could constitute prejudice under these circumstances, Citizens fails to demonstrate that there **is** deprivation of appellate review here.  It does not appear that Citizens is barred from appealing under these circumstances because of the delay in notice.  Moreover, there is no showing that such a bar would cause prejudice to Citizens as it relates to these circumstances.  In any event, the lack of prejudice to the insurer in this case weighs heavily as a consideration in favor of defendants as to whether there was a material breach.  *See Mapp*, 461 F. Supp.2d at 454.

     With regard to the third factor relevant to materiality, while the length of delay of notice in this case would appear at first blush to be substantial, similarly to *Mapp*, notice was reasonably given promptly after Ung became aware that a claim was being made **which may**

**implicate the Policy**.[11] As explained above, the delayed notice was reasonable **in light of the circumstances of the occurrence**. Accordingly, upon consideration of the factors which bear on materiality, under Virginia law, Ung's delay in giving notice was reasonable, was not material, and does not void the Policy in such a way as to relieve Citizens of its duty to defend its insured under the Policy.[12] Plaintiff has failed to carry the burden of showing that the delayed notice was not reasonable under the circumstances or was of such a substantial and material nature as to justify the voiding of the Policy. *See Gourdine*, 135 S.E.2d at 64.

---

[11]One significant difference between the facts in *Mapp* and here, however, is that in *Mapp*, once the insured became aware (2 years after the underlying incident) that a claim was being made against the insured bar owner in that case, it was clear that the incident was one covered by the policy at issue. In this case, even after the underlying state action was initiated stemming from Ung shooting DiDonato in Center City Philadelphia, it cannot be said that it would be evident to a reasonable insured that such a lawsuit involved an incident that may implicate the homeowners insurance Policy of Ung's parent in Virginia.

[12]Although Citizens also points to a recent case, *State Farm Fire and Cas. Co. v. Wallace*, 2014 WL 360181 (W.D. Va. 2014), in support of its position, *Wallace* clearly is distinguishable. First, Wallace involved **playing** with paint ball guns where the participants were "aiming at one another's lower extremities," and while the insured was "emptying his paint ball gun," he hit the victim in the eye. *Id.* at *1. The insurance policy implicated in *Wallace* covered "occurrences" which were defined as "accidents." It would seem evident to a reasonable insured that an incident where the insured injures another individual while **playing** with paint ball guns may implicate a policy covering accidents, as opposed to this case where it would not seem evident at all to an objective insured that such a homeowners policy may be implicated where the insured shot another individual several times with a gun during a confrontation. Furthermore, *Wallace* emphasized that "the implicated coverage provision of the policy . . . [was] written in clear and definitive language," and with regard to a paint ball gun accident, it was clear that under that policy language such an incident was covered. Here, as explained, it would not be evident to a reasonable insured that the underlying incident may implicate the Policy. Again, even Citizens argues that the underlying shooting does not trigger even the duty to defend.

14

### (C) Allegations in Underlying State Action Trigger Citizens' Duty to Defend

Plaintiff further argues that it has no duty to defend or indemnify Ung because the Complaint in the underlying state action does not allege an "occurrence" for purposes of the Policy and that the Policy's "Expected or Intended" exclusion applies. *See* Pl.'s Br. 13-19. In particular, plaintiff contends that the facts alleged in the Complaint in the underlying state action and the nature of DiDonato's claims therein indicate that Ung performed only intentional acts that did not qualify as "act[s] of negligence" under the Policy. *Id.* at 13-19.

Under the Policy, an "occurrence" means an accident which results, during the Policy period, in bodily injury or property damage. (JA 55.) Personal liability coverage does not apply to bodily injury that is "expected or intended by the 'insured.'" (JA 66.) Furthermore, the Policy states that "[i]f a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies [Citizens] will . . . Provide a defense . . . even if the suit is groundless, false or fraudulent." (JA 66.)

The operative Amended Complaint in the underlying state action makes numerous allegations that DiDonato's injuries were caused by the negligent conduct of Ung. (JA, Ex. B ¶¶ 63-66 (JA 47-48).) That Amended Complaint alleges that Ung negligently brought his firearm with him to some local bars while becoming heavily intoxicated. (*Id.* ¶¶ 38-39 (JA 47-48).) According to the Amended Complaint, Ung left the bars and became involved in a drunken confrontation with two of DiDonato's friends, and DiDonato and his friends were not armed. (*Id.* ¶ 65 (JA 47-48).) The Amended Complaint further alleges that, as a result of his

intoxication, Ung misinterpreted the situation and negligently perceived a threat that wasn't there. (*Id.* ¶ 65 (JA 47-48).) It also alleges that when Ung responded to the situation by shooting DiDonato, he used unreasonable force negligently and without due care for others. (*Id.* ¶ 64 (JA 47).)

      The Amended Complaint alleges that Ung acted negligently in:

(a) Escalating the dispute to the use of deadly force;

(b) Failing to attempt to retreat from any perceived threat;

(c) Failing to use appropriate, proportionate, and/or reasonable force;

(d) Using excessive, disproportionate and unreasonable force;

(e) Misunderstanding the situation and erroneously perceiving a threat of serious bodily harm;

(f) Shooting plaintiff when deadly force was neither required nor permitted;

(g) Shooting plaintiff with several bullets;

(h) Continuing to shoot plaintiff when he could not possibly have been a threat;

(i) Attempting to kill plaintiff with the use of excessive force;

(j) Carrying a firearm while intoxicated;

(k) Shooting plaintiff while intoxicated;

(l) Shooting the person who was not the aggressor;

(m) Failing to attempt to flee the scene before inflicting deadly force;

(n) Acting unreasonably throughout the altercation;

(o) Negligently discharging his weapon to the point that it was out of

        ammunition and continuing to pull the trigger; and

    (p)    Failing to exercise reasonable care.

(*Id.* ¶ 65 (JA 47-48).)

    "[A]n insurer is excused from its duty to defend the insured only where the complaint against the insured clearly demonstrates no basis upon which the insurer could be required to indemnify the insured under the policy." *Mapp*, 461 F. Supp.2d at 456 (citing *Fuisz v. Selective Ins. Co. of Am.*, 61 F.3d 238, 242 (4th Cir. 1995); *Travelers Indem. Co. v. Obsenshain*, 245 S.E.2d 247, 249 (Va. 1978)); *see Obsenshain*, 245 S.E.2d at 2249 ("The insurer is relieved of a duty to defend only when it clearly appears from the initial pleading the insurer would not be liable under the policy for *any* judgment based upon the allegations.") (emph. in original); *J.A.J., Inc. v. Aetna Cas. And Surety Co.*, 529 A.2d 806, 808 (Me. 1987) (An insurance company is obligated to defend an action against the insured where a mere "potential for liability within the coverage appeared from the allegations made" by the injured party.).

    The Court applies the "eight corners" rule in determining whether an insurance company has a duty to defend the insured. *Mapp*, 461 F. Supp.2d at 456; *see Am. Online, Inc. v. St. Paul mercury Ins. Co.*, 207 F. Supp.2d 459 (E.D. Va. 2002). The Court must review the policy language to determine the terms of the coverage at issue and compare it with the allegations in the underlying lawsuit to determine whether any of the claims asserted are covered by the Policy. *Mapp*, 461 F. Supp.2d at 456 (citing *Fuisz*, 61 F.3d at 242). "[T]he duty to defend is triggered when the underlying complaint alleges liability that '**potentially or arguably**' is covered by the policy." *Id.* (citing *Donnelly v. Transp. Ins. Co.*, 589 F.2d 761, 767 (4th Cir. 1978)) (emph. added).

Here, the allegations in the Amended Complaint **include** allegations that sound in **negligence**. *See, e.g., State Farm Fire & Cas. Co. v. Corry*, 324 F. Supp.2d 666 (E.D. Pa. July 8, 2004) (Pollak, J.). A review of the Policy language and a comparison of it with the allegations in the operative Amended Complaint in the underlying state action reveals that the Amended Complaint alleges liability that, in the very least, "potentially or arguably" is covered by the Policy.[13] *See id.* Therefore, Citizens has a duty to defend Ung in the state court proceeding. *See, e.g., id.* ("The allegations in [the] joinder complaint [in the underlying state action] thus sound in both intentional tort and negligence. Therefore, [the insurer] has a duty to defend [the insured] in the state court proceeding at this time.").

### (D)  Citizens' Duty to Indemnify

"Unlike the duty to defend, which arises whenever the claims asserted by the injured party **potentially** come within the coverage of the policy, the duty to indemnify is triggered only when the insured is determined to be liable for damages within the policy's coverage." *Corry*, 324 F. Supp.2d at 673; *see Mapp*, 461 F. Supp.2d at 458 ("the resolution of the duty to indemnify 'will depend on the resolution [in State Court] of facts alleged'"); *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004) ("insurer's duty to indemnify will depend on resolution of facts alleged in the complaint"). "Whereas the duty to defend must typically be decided before the underlying case proceeds, there is no equivalent need to resolve the question of an insurer's

---

[13]Indeed, under the Policy, "[i]f a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies, [Citizens] **will** . . . Provide a defense at [its] expense . . . **even if the suit is groundless, false or fraudulent**." (JA 66 (emph. added).)

duty to indemnify prior to the development of facts in the underlying case." *Corry*, 324 F. Supp.2d at 673.  Among other things, "[t]o rule on the indemnification question would require resolution of the merits of the underlying dispute, unduly prejudicing one or more of the litigants in the state court proceeding." *Id.*; *see Mapp*, 461 F. Supp.2d at 458 ("Because the factual allegations in the underlying State Court Proceeding, if proven, may give rise to a duty to indemnify, only after the State Court has made its decision will this Court be in a position to evaluate whether or not Plaintiff has a duty to indemnify.").  Accordingly, the cross-motions for summary judgment are denied as premature with respect to the issue of Citizens' duty to **indemnify** Ung, and the case is dismissed without prejudice to Citizens re-filing on that issue.

An appropriate Order follows.